1  KEKER & VAN NEST LLP
   STUART L. GASNER - #164675
2  sgasner@kvn.com
   LAURIE CARR MIMS - #241584
3  lmims@kvn.com
   NIKKI K. VO - #239543
4  nvo@kvn.com
   LISA C. EHRLICH - #270842
5  lehrlich@kvn.com
   710 Sansome Street
6  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
7  Facsimile:  (415) 397-7188

8  Attorneys for Defendants and Counterclaimants
   REARDEN COMMERCE, INC. and
9  KETERA TECHNOLOGIES, INC.

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  ARIBA, INC.,                          Case No. CV 11-01619

15                        Plaintiff,      **REARDEN COMMERCE INC. AND
                                          KETERA TECHNOLOGIES, INC.'S
16        v.                              ANSWER TO THE COMPLAINT,
                                          COUNTERCLAIMS AGAINST ARIBA,
17  REARDEN COMMERCE, INC.; KETERA        INC., AND DEMAND FOR JURY TRIAL**
   TECHNOLOGIES, INC.; DOES 1 through 10,
18  inclusive,
                                          Judge:       Hon. Elizabeth D. Laporte
19                        Defendants.      Comp. Filed:  April 4, 2011
                                          Trial Date:   To be determined
20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS
CASE NO. CV 11-01619

Defendants Rearden Commerce, Inc. ("Rearden") and Ketera Technologies, Inc. ("Ketera") respond to the Complaint filed by Plaintiff Ariba, Inc. ("Ariba") as follows:

## INTRODUCTION

1.      Rearden and Ketera lack sufficient information to admit or deny Ariba's claim to current ownership of a software program called Ariba Marketplace Software Standard Edition, and on that basis deny such allegation.  The remainder of this paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

2.      Rearden and Ketera admit that a subsidiary of Rearden merged with Ketera on November 30, 2010.  Except as so expressly admitted, Rearden and Ketera deny the remaining allegations in Paragraph 2 of the Complaint.

3.      This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

4.      This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

5.      Rearden and Ketera admit that in August 2000, Ariba and Ketera's predecessor-in-interest, Ventro Corporation ("Ventro"), entered into a nonexclusive software license agreement ("Software License Agreement").  Rearden and Ketera deny that Exhibit 1 is a true and correct copy of the Software License Agreement, because, *inter alia*, Exhibit 1 is missing the "Source Code Escrow Agreement" attachment to Schedule H and Exhibit 1 includes an "Amendment No. 1" which does not relate to the Software License Agreement that the parties entered into on August 1, 2000.  Rearden and Ketera admit that on November 19, 2010, Ketera sent a letter to the address for notice to Ariba under the original Software License Agreement regarding the proposed merger.  Rearden and Ketera admit Ariba sent a letter to Ketera dated November 29, 2010.  Rearden and Ketera further admit that on December 1, 2010, Rearden and Ketera publicly announced that a subsidiary of Rearden had merged with Ketera.  Except as so expressly admitted, Rearden and Ketera deny the remaining allegations in Paragraph 5 of the Complaint.

1

6.      Rearden and Ketera admit that the August 2000 Software License Agreement contains a Schedule K that is entitled "Source Code Access Agreement."  Rearden and Ketera further admit that Ariba and Ketera's predecessor-in-interest, MarketMile LLC ("MarketMile"), amended the Software License Agreement on December 20, 2001 (the "2001 Amendment"). Rearden and Ketera deny that Exhibit 2 is a true and correct copy of the December 20, 2001 Amendment because the amendment by its terms has an attachment, "Exhibit A," that is not included in Exhibit 2.  Rearden and Ketera admit that Percival Tieng was an employee of Ketera on January 24, 2002.  Except as so expressly admitted, Rearden and Ketera deny the remaining allegations in Paragraph 6 of the Complaint.

7.      Rearden and Ketera admit Ariba sent a letter dated November 29, 2010 raising certain allegations of breach.  The remainder of this paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

## JURISDICTION AND VENUE

8.      Rearden and Ketera admit that the Complaint purports to state a cause of action for copyright violation pursuant to 17 U.S.C. § 101, *et seq*.  The remainder of this paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

9.      This paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

10.      Rearden and Ketera admit that Rearden's principal place of business is located in Foster City, California and that it is a California corporation.  The remainder of this paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

## THE PARTIES

11.      Rearden and Ketera admit, on information and belief, that Ariba is a Delaware corporation having its principal place of business in Sunnyvale, California.  Except as so expressly admitted, Rearden and Ketera lack sufficient information to admit or deny the

554796.01

remaining allegations in this Paragraph, and on that basis deny them.

12.     Rearden and Ketera admit that Rearden is a California corporation having its principal place of business in Foster City, California.  Except as so expressly admitted, Rearden and Ketera deny the remaining allegations in Paragraph 12 of the Complaint.

13.     Rearden and Ketera admit that Ketera is a Delaware corporation having its principal place of business in San Jose, California.  Rearden and Ketera also admit that Ketera became a wholly-owned subsidiary of Rearden on November 30, 2010.

14.     This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

15.     This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

16.     This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

## FACTUAL ALLEGATIONS

17.     Rearden and Ketera lack sufficient information to admit or deny the allegations in Paragraph 17 of the Complaint and on that basis deny those allegations.

18.     Rearden and Ketera lack sufficient information to admit or deny the allegations in Paragraph 18 of the Complaint and on that basis deny those allegations.

19.     Rearden and Ketera lack sufficient information to admit or deny the allegations in Paragraph 19 of the Complaint and on that basis deny those allegations.

20.     Rearden and Ketera admit that on August 1, 2000, Ariba entered into a nonexclusive software license agreement with Ventro Corporation to, among other things, license Ariba's Marketplace and Dynamic Trade software programs.  Except as so expressly admitted, Rearden and Ketera lack sufficient information to admit or deny the remaining allegations in this paragraph, and on that basis deny them.

21.     Rearden and Ketera admit that the Software License Agreement entered into between Ariba and Ventro on August 1, 2000 granted Ventro a variety of rights, including the right to use certain Ariba software programs.  Except as so expressly admitted, Rearden and

Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

22.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

23.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

24.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

25.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

26.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

27.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

28.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Rearden and Ketera state that terms of the contract speak for themselves and deny the remainder of the allegations in this paragraph.

29.     Rearden and Ketera admit that, on December 20, 2001, Ariba and MarketMile executed a letter agreement modifying the terms of the Software License Agreement.  Except as so expressly admitted, Rearden and Ketera deny the remainder of the allegations in this paragraph.

30.     This paragraph states a legal conclusion to which no response is required, but to

the extent a response is required, Rearden and Ketera deny the remainder of the allegations in this paragraph.

31.     Rearden and Ketera admit Percival Tieng was the Chief Technology Officer of Ketera prior to the Ketera-Rearden merger.  Rearden and Ketera deny the remaining allegations in Paragraph 31 of the Complaint.

32.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly deny the remainder of the allegations in this paragraph.

33.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly and deny the remainder of the allegations in this paragraph.

34.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly deny the remainder of the allegations in this paragraph.

35.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly deny the remainder of the allegations in this paragraph.

36.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly deny the remainder of the allegations in this paragraph.

37.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Rearden and Ketera lack sufficient knowledge to admit or deny and accordingly deny the remainder of the allegations in this paragraph.

38.     Rearden and Ketera admit that in August 2002, MarketMile changed its name to Ketera Technologies, Inc.

39.     Rearden and Ketera deny each and every allegation in Paragraph 39 of the Complaint.

40.     Rearden and Ketera admit that on August 11, 2010, Ariba entered into a Services

554796.01

Product Agreement with a marketing firm named CXO Communication, and that certain Ariba information was provided to CXO as part of that engagement.  Rearden and Ketera admit that Andrea Cunningham was CXO's founder and served as its Chief Executive Officer.  Rearden and Ketera admit that on or about December 21, 2010, Rearden announced that Andrea Cunningham would be Rearden's Chief Marketing Officer.  The remaining allegations in Paragraph 40 of the Complaint are denied.

41.    Rearden and Ketera deny each and every allegation in Paragraph 41 of the Complaint.

42.    Rearden and Ketera admit that Ketera sent Ariba a letter on November 19, 2010 and state that the letter speaks for itself.  Except as so expressly admitted, Rearden and Ketera deny each and every allegation in Paragraph 42 of the Complaint.

43.    Rearden and Ketera admit that Ketera received a letter dated November 29, 2010 from Ariba accusing Ketera of violating the terms of the Software License Agreement.  Rearden and Ketera further admit that, on December 1, 2010, Rearden announced that one of its subsidiaries had merged with Ketera.  Except as so expressly admitted, Rearden and Ketera deny each and every allegation in Paragraph 43 of the Complaint.

44.    Rearden and Ketera admit that on December 29, 2010, Ariba sent Ketera a letter purporting to terminate the Software License Agreement, effective January 28, 2011.  Except as so expressly admitted, Rearden and Ketera state that letter speaks for itself and deny the remainder of the allegations in this paragraph.

45.    Rearden and Ketera admit that on January 10, 2011, Ariba sent Ketera a letter purporting to terminate the Online Source Code Agreement.  Except as so expressly admitted, Rearden and Ketera state that letter speaks for itself and deny the remainder of the allegations in this paragraph.

46.    Rearden and Ketera state that the letter speaks for itself and deny the allegations in this paragraph.

47.    This paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

48.    Rearden and Ketera admit that Ketera has not returned to Ariba the licensed software and source code, because they believe Ketera possesses a valid license to such materials and that Ariba is wrongfully demanding their return.  The remainder of this paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the remaining allegations in this paragraph.

49.    Rearden and Ketera admit they have not certified that they are no longer using the licensed software and source code, because they believe Ketera possesses a valid license to use such software and source code and that Ariba is wrongfully demanding such certification.  The remainder of this paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the remaining allegations in this paragraph.

50.    Rearden and Ketera admit, on information and belief, that Ketera has not used the "Powered by Ariba" logo.  The remainder of this paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the remaining allegations in this paragraph.

51.    This paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

52.    Rearden and Ketera admit that they have not disclosed any Ketera work product to Ariba, because they believe they are not required to do so.  The remainder of this paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Rearden and Ketera deny the remaining allegations in this paragraph.

## CLAIMS FOR RELIEF

## FIRST CLAIM OF ACTION

### [Copyright Infringement, 17 U.S.C. § 101, *et seq.*]

### [Against All Defendants]

53.    Rearden and Ketera hereby incorporate by reference and reallege each and every response they have made to Paragraphs 1 through 52, above.

54.    Rearden and Ketera lack sufficient information to admit or deny the allegations in

554796.01

1    Paragraph 54 of the Complaint and on that basis deny those allegations.

2        55.      Rearden and Ketera lack sufficient information to admit or deny the allegations in

3    Paragraph 55 of the Complaint and on that basis deny those allegations.

4        56.      Rearden and Ketera lack sufficient information to admit or deny the allegations in

5    Paragraph 56 of the Complaint and on that basis deny those allegations.

6        57.      This paragraph sets forth a legal conclusion to which no response is required. To

7    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

8        58.      This paragraph sets forth a legal conclusion to which no response is required. To

9    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

10       59.      Rearden and Ketera deny each and every allegation in Paragraph 59 of the

11    Complaint.

12       60.      This paragraph sets forth a legal conclusion to which no response is required. To

13    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

14       61.      This paragraph sets forth legal conclusions to which no response is required. To

15    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

16       62.      Rearden and Ketera deny each and every allegation in Paragraph 62 of the

17    Complaint .

18       63.      This paragraph sets forth a legal conclusion to which no response is required. To

19    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

20       64.      This paragraph sets forth a legal conclusion to which no response is required. To

21    the extent that a response is required, Rearden and Ketera deny the allegations in this paragraph.

22                          **<u>SECOND CLAIM FOR RELIEF</u>**

23                 **[Breach of Software License Agreement]**

24                           **[Against Ketera]**

25       65.      Ketera hereby incorporates by reference and realleges each and every response

26    they have made to Paragraphs 1 through 64, above.

27       66.      Ketera admits that on August 1, 2000, Ariba and Ventro entered into the Software

28    License Agreement, providing Ventro with a variety of rights, including the right to use Ariba's

Marketplace and Dynamic Trade software.

67.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Ketera states that the terms of the contract speak for themselves and denies the remainder of the allegations in this paragraph.

68.     Ketera admits that, on November 19, 2010, Ketera sent Ariba a letter providing notice of its proposed merger with a subsidiary of Rearden.  Except as so expressly admitted, Ketera states that the letter speaks for itself and denies the remainder of the allegations in this paragraph.

69.     Ketera admits that, on November 29, 2010, Ariba responded to Ketera's November 19, 2010 letter.  Except as so expressly admitted, Ketera states that the letter speaks for itself and denies the remainder of the allegations in this paragraph.

70.     Ketera admits that, on December 1, 2010, Rearden announced that one of its subsidiaries had merged with Ketera on November 30, 2010.  Except as so expressly admitted, Ketera denies the remainder of the allegations in this paragraph.

71.     Ketera admits that, on December 29, 2010, Ariba sent Ketera a letter purporting to terminate the Software License Agreement effective January 28, 2011.  Except as so expressly admitted, Ketera states that the December 29, 2010 letter speaks for itself and denies the remainder of the allegations in this paragraph.

72.     Ketera denies each and every allegation in Paragraph 72 of the Complaint.

73.     This paragraph states legal conclusions to which no response is required, but to the extent a response is required, Ketera states that terms of the contract speak for themselves and denies the remainder of the allegations in this paragraph.

74.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera denies the allegations in this paragraph.

### THIRD CLAIM FOR RELIEF

**[Breach of the Online Source Code Agreement]**

**[Against Ketera]**

75.     Ketera hereby incorporates by reference and realleges each and every response

9

made to Paragraphs 1 through 74, above.

76.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera denies the allegations in this paragraph.

77.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera denies the allegations in this paragraph.

78.     Ketera denies each and every allegation in Paragraph 78 of the Complaint.

79.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera lacks sufficient knowledge to admit or deny and accordingly denies the allegations in this paragraph.

80.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera lacks sufficient knowledge to admit or deny and accordingly denies the allegations in this paragraph.

81.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera lacks sufficient knowledge to admit or deny and accordingly denies the allegations in this paragraph.

82.     This paragraph states a legal conclusion to which no response is required, but to the extent a response is required, Ketera denies the allegations in this paragraph.

83.     Ketera admits that, on January 10, 2011, Ariba sent Ketera a letter purporting to terminate the Online Source Code Agreement.  Except as so expressly admitted, Ketera states that Ariba's January 10, 2011 letter speaks for itself and denies the remainder of the allegations in this paragraph.

84.     This paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Ketera denies the allegations in this paragraph.

85.     This paragraph sets forth legal conclusions to which no response is required.  To the extent that a response is required, Ketera denies the allegations in this paragraph.

86.     This paragraph sets forth a legal conclusion to which no response is required.  To the extent that a response is required, Ketera denies the allegations in this paragraph.

1

**FOURTH CLAIM FOR RELIEF**

2

**[Breach of Implied Covenant of Good Faith and Fair Dealing]**

3

**[Against Ketera]**

4      87.      Ketera hereby incorporates by reference and realleges each and every response

5   made to Paragraphs 1 through 86, above.

6      88.      This paragraph sets forth a legal conclusion to which no response is required.  To

7   the extent that response is required, Ketera denies the allegations in this paragraph.

8      89.      This paragraph sets forth a legal conclusion to which no response is required.  To

9   the extent that response is required, Ketera denies the allegations in this paragraph.

10      90.      This paragraph sets forth a legal conclusion to which no response is required.  To

11   the extent that response is required, Ketera denies the allegations in this paragraph.

12

**FIFTH CLAIM FOR RELIEF**

13

**[Intentional Interference with Contract]**

14

**[Against Rearden]**

15      91.      Rearden hereby incorporates by reference and realleges each and every response

16   made to Paragraphs 1 through 90, above.

17      92.      Rearden denies each and every allegation in Paragraph 92 of the Complaint .

18      93.      Rearden denies each and every allegation in Paragraph 93 of the Complaint.

19      94.      Rearden denies each and every allegation in Paragraph 94 of the Complaint.

20      95.      This paragraph sets forth a legal conclusion to which no response is required.  To

21   the extent that response is required, Rearden denies the allegations in this paragraph.

22

**SIXTH CLAIM FOR RELIEF**

23

**[Violation of Business and Professions Code Section 17200]**

24

**[Against All Defendants]**

25      96.      Rearden and Ketera hereby incorporate by reference and reallege each and every

26   response they have made to Paragraphs 1 through 95, above.

27      97.      This paragraph sets forth legal conclusions to which no response is required.  To

28   the extent that response is required, Rearden and Ketera deny the allegations in this paragraph.

11

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS
CASE NO. CV 11-01619

98.     This paragraph sets forth legal conclusions to which no response is required.  To the extent that response is required, Rearden and Ketera deny the allegations in this paragraph.

## RESPONSE TO PRAYER FOR RELIEF

Rearden and Ketera deny that Plaintiff is entitled to any of the relief that it has requested in paragraphs 1 through 5 of its prayer for relief, and deny all factual allegations contained therein.

Rearden and Ketera deny each allegation of the Complaint not expressly admitted herein and deny that Plaintiff is entitled to any of the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

Rearden and Ketera assert the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint, and each cause of action alleged in it, fails to state a cognizable cause of action.

## SECOND AFFIRMATIVE DEFENSE

### (License)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has licensed Ketera's use of Plaintiff's technology, and the conduct attributed to Defendants falls within the scope of the license.

## THIRD AFFIRMATIVE DEFENSE

### (Copyright Misuse)

Plaintiff's claims are barred, in whole or in part, by the doctrine of copyright misuse.

## FOURTH AFFIRMATIVE DEFENSE

### (Implied Consent)

Plaintiff's claims are barred, in whole or in part, by the doctrine of implied consent.

## FIFTH AFFIRMATIVE DEFENSE

### (Independent Creation)

Plaintiff's claims are barred, in whole or in part, by the doctrine of independent creation.

12

## SIXTH AFFIRMATIVE DEFENSE

### (Fair Use)

Plaintiff's claims are barred, in whole or in part, by the doctrine of fair use.

## SEVENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

To the extent Plaintiff seeks damages for alleged conduct outside the relevant statutes of limitations for its various claims including contractual statutes of limitations contained in the license, Plaintiff's claims are barred.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Assuming without conceding that the Complaint states a claim, Plaintiff has failed to mitigate its damages, if any such damages exist.

## NINTH AFFIRMATIVE DEFENSE

### (Proximate Cause)

Plaintiff's claims are barred because Defendants' acts or omissions, wrongful or otherwise, were not the proximate cause of Plaintiff's alleged injuries, if any.

## TENTH AFFIRMATIVE DEFENSE

### (Unclean Hands, Laches, and Estoppel)

The relief sought is barred by one or more of the equitable doctrines of unclean hands, laches, and/or estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

Plaintiff's requested relief is barred by the doctrines of waiver and estoppel.

## TWELFTH AFFIRMATIVE DEFENSE

### (Limited Remedies)

Assuming without conceding that the Complaint states a claim for relief, Plaintiff's remedies are limited by the terms of the alleged agreements.

554796.01

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable and Plaintiff has an adequate remedy at law.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

Plaintiff's claims are barred, in whole or in part, because Plaintiffs' alleged damages, if any, are speculative and uncertain.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Allow Time for Cure)

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to provide in good faith a sufficient time to cure the alleged breaches and/or breached the contractually-mandated cure provisions of the license.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Non-Material Breach)

Plaintiff's claims are barred, in whole or in part, because the breaches alleged are not material.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Performance)

Plaintiff's claims are barred, in whole or in part, because Ketera fully performed all obligations.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Novation)

Plaintiff's claims are barred, in whole or in part, by the doctrine of novation.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Unconscionability)

Plaintiff's claims are barred, in whole or in part, by reason of the statutory and common law prohibitions on enforcement of unconscionable contracts, the prohibition on receipt of

14

benefits accruing through unconscionable conduct, and the unconscionability of the Plaintiff's acts and claims.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Good Faith)

Plaintiff's contract claims are barred, in whole or in part, due to Defendants' good faith efforts to settle the dispute through their state court declaratory judgment action.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Conduct not "Unlawful")

Plaintiff's §17200 claims are barred, in whole or in part, due to Defendants' lawful conduct in complying with all applicable agreements among the parties including the software license.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (Conduct not "Unfair")

Plaintiff's §17200 claims are barred, in whole or in part, due to Defendants' fair conduct in complying with all applicable agreements among the parties including the software license.

### COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimants Rearden Commerce, Inc. and Ketera Technologies, Inc. hereby assert claims against Counter-defendant Ariba, Inc. as follows:

### INTRODUCTION

1.      Upon receiving notice of a proposed merger between its long-time licensee Ketera and Rearden, an up-and-coming entrepreneurial start-up in the e-commerce space, Ariba has engaged in a concerted unlawful course of conduct aimed at interfering, disrupting and delaying that merger, which it apparently sees as a competitive threat.

2.      Ketera and Ariba are parties to a Software License Agreement under which Ketera paid approximately $6.5 million for perpetual license rights to certain Ariba software and source code.  That Software License Agreement between Ariba and Ketera provided that Ketera could assign its rights through merger without Ariba's consent, unless Ketera was merging with

a defined list of forty "Ariba Competitors."  Rearden is not—and has never been—on that list.

3.      The only potential right that Ariba had in a situation where Ketera merged with an entity that was not on that list of forty "Ariba Competitors" was to engage in "good faith negotiations" with Ketera about "additional fees, if any" due on account of the assignment. Ariba refused to engage in any such negotiations and instead purported to terminate the License Agreement, in express violation of the termination provisions of the License Agreement, and demanded that Ketera cease all use, and return all copies, of the licensed software and source code.

4.      Upon information and belief, Ariba unlawfully purported to terminate the License, despite its knowledge that Ketera, acting in reliance upon the terms of the License, had developed its own software applications that interface and interact with the Ariba code (defined in the License as "Licensee Applications"), and that its unlawful demands for return of all copies of the licensed Ariba software and source code would interfere with Counterclaimants' ability to use Ketera's own Licensee Applications.

5.      In the face of Ariba's unsupported claims of purported termination, Rearden and Ketera have been forced to incur substantial costs and deplete internal resources to take protective measures with respect to any Ariba code in Ketera's possession in anticipation of litigation, and will continue to suffer damages in designing and developing new code and modifying the Licensee Applications.

## PARTIES

6.      Counterclaimant Rearden is a California corporation having its principal place of business in Foster City, California.  Rearden is a technology company focusing on personalizing the web by building software designed to provide users with a "personal internet assistant" that can connect to a standardized platform for electronic commerce.  Rearden's corporate customers use the software to allow their employees to purchase or reserve services such as airline travel from their desktops or mobile devices.  This allows greater employee independence and allows employers to get the benefit of their discounts with service providers.

7.      Counterclaimant Ketera is a Delaware corporation having its principal place of

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS
CASE NO. CV 11-01619

1   business in San Jose, California.  Ketera merged with a subsidiary of Rearden on November 30,

2   2010.

3           8.      Counter-defendant Ariba is a Delaware corporation having its principal place of

4   business in Sunnyvale, California.  Ariba is a provider of collaborative business commerce

5   solutions.

6   **JURISDICTION AND VENUE**

7           9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims

8   pleaded in this Counterclaim are so related to the Complaint that they form part of the same case

9   or controversy under Article III of the United States Constitution.

10          10.     The Court has personal jurisdiction over Ariba because it is present in this District

11  and has availed itself of this Court's jurisdiction.  Venue over the counterclaims is proper in this

12  District under 28 U.S.C. § 1391(b) because Ariba is present in this district, because a substantial

13  part of the conduct alleged in the counterclaims occurred in this District, and because a

14  substantial part of the resulting harm has occurred and will continue to occur in this District.

15  **NATURE OF THE ACTION**

16  **The License Agreement**

17          11.     Ariba entered into a Software License Agreement ("License Agreement") with

18  Ventro Corporation ("Ventro") on August 1, 2000.  Under the License Agreement, Ventro had

19  the rights, among many other rights, to use designated Ariba software and to access and use the

20  source code related to the Ariba software to develop its own software applications, "Licensee

21  Applications," that interface and interact with the Ariba software.

22          12.     By letter dated December 20, 2001 ("2001 Amendment"), Ariba acknowledged

23  that Ventro had assigned its rights under the License Agreement to a company called MarketMile

24  LLC ("MarketMile").  Under the 2001 Amendment, MarketMile and Ariba modified portions of

25  the License Agreement and made the license perpetual, upon payment of certain subscription

26  fees.  Those subscription fees were paid in December 2001 and the license became perpetual,

27  subject only to the termination provisions in Section 10 of the License Agreement.

28          13.     Under Section 10 of the License Agreement, Ariba shall only have the right to

17

terminate the License Agreement in the event that Licensee: (1) "shall *materially* breach any provision of this Agreement *and shall fail to cure* such material breach within (60) days after receiving written notice of termination from Ariba specifying the alleged breach," or (2) "if Licensee fails to pay when due any fees for the Software and continues to be delinquent for a period of thirty (30) days after receipt of written notice of non-payment."  License Agreement, Section 10(b)(i) & (d).

14.     In August 2002, MarketMile changed its name to Ketera Technologies, Inc.

15.     Ketera has paid all fees due and has otherwise complied with all obligations under the License Agreement as amended by the 2001 Amendment.

16.     The License Agreement, as modified by the 2001 Amendment (hereinafter referred to collectively as the "License Agreement"), is a legally enforceable contract between and among Ketera and Ariba, and their respective predecessors, successors, and assigns.

17.     Ketera's predecessors-in-interest entered into the License Agreement intending to abide by its terms and Ketera has always performed, and intended to perform, its obligations under that License Agreement.

18.     The assignment clause, as modified by the 2001 Amendment, states as follows:

(c)     Assignment. For purposes of this Agreement, and except as otherwise described herein, neither party shall assign its rights and obligations hereunder without the prior written consent of the other party, such consent not to be unreasonably withheld.  *However*, either party *shall have the right* to assign its rights and obligations under this Agreement, in their entirety, upon *written notice* to the other party, so long as such assignment is in connection with the assignor's sale of all or substantially all of its assets, or merger or consolidation by operation of law to a creditworthy third party.  Prior to an assignment by Licensee of its rights and obligations under this Agreement pursuant to the previous sentence, in their entirety, the parties will negotiate, in good faith, to determine the additional fees, if any, to be paid by the resulting assignee of the assignment; provided, however, that, in the event that such assignment results in or naturally would result in an expansion in use (i.e., through-put) into the Marketplace as reasonably determined by comparison to Ariba's then-current price list, (a) such additional Subscription Fee may be increased by Ariba as reasonably determined by comparison to Ariba's then-current price list but not by more than one hundred percent (100%) of the Subscription Fee already paid by Licensee for the term of this Agreement assumed by the assignee and (b) the definition of Marketplace Revenues for purposes of determination of Gain Share shall be expanded as reasonably determined by comparison to Ariba's then-current price list (e.g., to include, in all instances, all gross top-line revenue rather than just the revenue sources defined in Schedule A).  In no event may Licensee assign this Agreement to a Ariba Competitor.

1    License Agreement Section 12(c), as modified by the 2001 Amendment (emphasis

2    added).

3                **Notice of Proposed Merger and Ariba's Unwarranted Claims of Breach**

4        19.    On November 19, 2010, Ketera complied with the License Agreement by sending

5    a letter to Ariba giving written notice of its merger with Rearden Commerce and any attendant

6    assignment of its rights and obligations under the License Agreement by operation of law.

7    Ketera complied with the express language of the License Agreement, which requires written

8    notice of an assignment through merger.  The plain language of the License Agreement

9    embodies the intent of the parties upon entering into the contract to allow assignment by merger

10   upon written notice to the other party.

11       20.    Rearden Commerce is not an "Ariba Competitor," as listed in Schedule J of the

12   License Agreement.  "Ariba Competitor" is a defined term in the License Agreement, and "shall

13   mean up to forty (40) third parties listed on Schedule J, as such Schedule may be amended from

14   time to time by Ariba on ninety (90) days advance written notice to Licensee, whose primary

15   focus is the development and/or distribution of business to business e-commerce software

16   solutions enabling companies to host online marketplaces or trading communities."  License

17   Agreement § 1.  Schedule J does not include, nor has it ever included, Rearden Commerce.

18   Moreover, Rearden does not fit within the definition of an Ariba Competitor because Rearden's

19   primary focus is not hosting online marketplaces or trading communities.

20       21.    The November 19, 2010 letter stated that Ketera would continue to remain fully

21   liable for any and all obligations accruing under the License Agreement.  Ketera believed that no

22   additional fees were warranted due to the Merger because Ketera was planning to operate as a

23   wholly-owned subsidiary of Rearden in substantially the same way that it had operated before.

24   However, Ketera was ready, willing and able to negotiate with Ariba over the issue of whether or

25   not additional fees might be due in accordance with the portion of Section 12(c) of the License

26   Agreement requiring good-faith negotiations of any additional fees by the resulting assignee of

27   the assignment (hereinafter "the Negotiation Clause").

28       22.    On November 29, 2010, Ariba sent a letter to Ketera alleging Ketera was in

breach of the License Agreement for undertaking an improper assignment and failing to provide certain fee reports and pay certain fees due. Ariba claimed in the letter that the advance written notice Ketera provided was not "adequate" advance written notice – even though Ketera sent the letter on November 19, 2010, almost two weeks before the actual closing of the Rearden-Ketera merger. Ariba also claimed that Ketera failed to negotiate over fees under the Negotiation Clause, but at no point did Ariba attempt to enter into fee negotiations with Ketera prior to sending its November 29 letter. Instead, Ariba insisted that the breach was incurable unless Ketera completely cancelled the merger.

23. In addition, the November 29 letter from Ariba included a claim of termination based on an alleged failure to send payment reports and pay certain Marketplace Revenue Share fees due, the last of which were due and paid in full over 5 years ago. Ariba failed to specify when such payment reports were not sent and fees were allegedly not paid, what amount was allegedly due, or any purported actions Ariba may have taken in the last five years to address this issue. In addition, Ariba ignored that such claims would be barred by both the statute of limitations in the License Agreement and the California Civil Code, and thus, could not be grounds for termination. Upon information and belief, Ariba knew that its claims of breach concerning Marketplace Revenue Share Fees lacked merit, but only included them as a basis to seek termination in 30 days rather than 60 days. The speciousness of these claims is evidenced by Ariba's election not to include them in its Complaint in this action.

24. In the November 29, 2010 letter, Ariba claimed the alleged breaches were not susceptible to cure and purported to terminate the License Agreement, effective only 30 days from the date of the letter, on December 29, 2010, despite the 60-day cure period applicable to any breach not concerning payment of fees.

25. In the November 29, 2010 letter, Ariba demanded that Ketera cease use of all Ariba software and certify in writing that it had not retained any copies of the software, the software documentation, or any other proprietary or confidential information of Ariba.

26. Ariba fails to mention in the November 29 letter several of the allegations upon which Ariba now purports to base its claims in the Complaint in this action. For example, Ariba

does not take issue with the mailing address to which Ketera sent notice of the proposed merger. Nor does Ariba challenge the proposed merger on the grounds that Rearden is an "Ariba Competitor," either as that term is defined in the License Agreement, or more generally.  Ariba never mentions any purported failure to display the "Powered by Ariba" logo in any way.  Most importantly, Ariba neglects to mention the alleged click-through "Source Code Access Agreement."

27.     On November 30, 2010, a wholly-owned subsidiary of Rearden merged with Ketera.  Upon the merger, Ketera survived as a wholly-owned subsidiary of Rearden.

28.     On December 27, 2010, Rearden and Ketera responded to Ariba's November 29 letter and denied any breach of the License Agreement and any failure to pay past fees due. Rearden and Ketera pointed out that Ariba has failed to provide the contractually-required 60-day period for cure prior to the alleged termination.  Despite Rearden and Ketera's belief that no additional fees were due, Rearden and Ketera told Ariba that they were willing to negotiate in good faith pursuant to the Negotiation Clause regarding any additional fees.

29.     On December 29, 2010, Ariba sent a letter conceding it would not terminate prior to the passage of sixty days.  It continued to claim, despite the clear language of the License Agreement, that Ketera failed to provide adequate notice, pay fees, or enter into negotiation concerning the assignment.  Ariba ignored Rearden's attempts to open discussions, and made no effort, much less a good faith one, to comply with its own obligations under the Negotiation Clause.

30.     Again, at no point in the December 29 letter does Ariba take issue with the mailing address to which the notice of proposed merger was sent, nor raise any issue concerning the "Powered by Ariba" logo.  And, again, there is no mention whatsoever of the click-through "Online Source Code Agreement."

### The Alleged Click-Through "Online Source Code Agreement"

31.     Then, on January 10, 2011, over a month and a half after Ariba had notice of the proposed merger between Ketera and Rearden, Ariba sent a letter alleging that Ketera had breached certain alleged standardized online click-through terms, which it now calls the "Online

21

554796.01

Source Code Agreement" in its Complaint in this action.

32.    According to the January 10 letter, the form, click-through terms of the Online Source Code Agreement bar any assignment or transfer, by merger or otherwise of the recipient's rights and obligations as to Ariba's source code, and provide for immediate termination in the event of an assignment or transfer.  Ariba claimed that the merger between Ketera and Rearden violated those provisions and purported to terminate immediately the alleged "Online Source Code Agreement."

33.    In the January 10 letter, Ariba additionally claimed that these online terms give it a perpetual license to any modifications, enhancements, improvements to or derivative works Ketera made from the Ariba source code and demanded that Ketera deliver a copy of all such "Work Product" to Ariba.

34.    The January 10, 2011 letter is void of any reference to breach based on Ketera developing or distributing applications that compete with the Marketplace Software.  Ketera and its predecessor MarketMile have always been in the business of developing and distributing applications that compete with the Marketplace Software.  However, prior to including this claim in its Complaint in this action, Ariba never had previously taken any action to enforce this non-compete provision or any other provision of the "Online Source Code Agreement" that it alleges exists between Ariba and Ketera.

35.    The January 10, 2010 letter also demanded that Ketera promptly destroy all Ariba Information and all other proprietary or confidential materials belonging to Ariba, and certify in writing that it had not retained any copies of the Ariba Information, any documentation related to Ariba Information, any licensing, delivery or technical information regarding the Ariba Information, or any other proprietary confidential information of Ariba relating to the Ariba Information.

36.    Ketera does not have any source code in its possession that would be subject to the alleged Online Source Code Agreement.

37.    The Ariba source code in Ketera's possession is governed by the negotiated License Agreement, specifically Schedule K thereto, which is entitled "Source Code Access

22

Agreement."  Schedule K provides the Licensee with access to and use of the Ariba source code to develop "Licensee Applications, as that term is defined in the License Agreement."  Schedule K, ¶ 1.  "Licensee Applications" is defined as "software applications (and any documentation thereof) developed by Licensee, which are designed to electronically interface and interact with the Software and which provide enhancements and/or supplemental functionality or functionality separate and apart from the Software functionality."  License Agreement, Section 1 (Definitions).

38.     Schedule K is consistent with the remainder of the License Agreement in that it only prohibits assignment through merger with the list in Schedule J of "Ariba Competitors" as that term is defined in the License Agreement.  As stated above, that list does not include, and has never included, Rearden Commerce.

39.     Section 12(e) of the License Agreement provides that "[n]o amendment to or modification of this Agreement shall be binding upon either party unless such amendment or modification is reduced to writing, dated and executed by the parties to this Agreement and it is identified by the parties to be an amendment to this Agreement."

40.     The 2001 Amendment did not amend or modify Schedule K.  Section 10(d) of the Amendment deletes Schedule H, the Source Code *Escrow* Agreement, and provides that the Licensee "may" in the future download source code pursuant to online terms.  Ketera does not have in its possession (and therefore has not and cannot use) any Ariba source code that was downloaded after the 2001 Amendment was executed.

**Ariba's Continued Bad-Faith Concerning Its Obligations Under the Negotiation Clause**

41.     Despite Ariba's failure to act in good faith, on January 19, 2011, Ketera sent a letter to Ariba attempting again to fulfill any obligations it had under the Negotiation Clause. While stating its continuing belief that no additional fees are warranted, Ketera, in the spirit of cooperation and compromise, stated its willingness to make a one-time additional subscription fee payment of $100,000.  By letter dated January 24, 2011, Ariba refused to negotiate, again claiming that the negotiations could only occur prior to the merger.

42.     Because of Ariba's meritless claims of breach and purported termination effective

January 28, 2011 of Ketera's rights under the License Agreement and alleged Online Source Code Agreement, Rearden and Ketera have been forced to stall integration of their software and businesses.  Rearden was also compelled to file a declaratory judgment action in Santa Clara County Superior Court on January 27, 2011, seeking a determination that Rearden and Ketera had not breached the Software License Agreement and had the right to continue using Ariba's software and source code.  After Rearden filed its declaratory action, Ariba asked Rearden to postpone serving the complaint to allow the parties to attempt to settle their dispute.  The parties' settlement negotiations, however, were unsuccessful and, on March 28, 2011, Rearden served the declaratory action complaint upon Ariba.  In response, Ariba filed the Complaint in this action.

43.     Section 12(n) of the Software License Agreement states that "[t]he prevailing party in any dispute between the parties shall recover its reasonable attorneys' fees and costs from the non-prevailing party."  Rearden and Ketera have incurred substantial attorneys' fees and other expenses in connection with the filing of the declaratory action in Santa Clara County Superior Court and in having to defend themselves in this litigation and bring these counterclaims to vindicate their rights.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

**(By Ketera)**

44.     Ketera realleges each and every allegation in paragraphs 1-43.

45.     The License Agreement is a valid contract.

46.     Ketera has performed and is willing to perform all obligations under the contract.

47.     Ketera provided advance written notice of its merger with Rearden.

48.     Ketera was at all times willing to negotiate in good faith with Ariba regarding the possibility of additional fees due.  This included Ketera's offer of an additional $100,000 subscription fee, despite its belief that no additional fees are due under the License Agreement.

49.     Ariba has breached the License Agreement by sending a Notice of Termination in violation of Section 10 of the License Agreement, the termination clause.

50.     Under Section 10 of the Software License Agreement, Ariba shall only have the

right to terminate the Agreement in the event Licensee: (1) "shall *materially* breach any provision of this Agreement *and shall fail to cure* such material breach within (60) days after receiving written notice of termination from Ariba specifying the alleged breach," or (2) "if Licensee fails to pay when due any fees for the Software and continues to be delinquent for a period of thirty (30) days after receipt of written notice of non-payment."  License Agreement, Section 10(b)(i) & (d) (emphasis added).

51.     Ariba has breached the License Agreement by purporting to terminate when not warranted by the termination clause because, among other things, (1) Ketera provided written notice of the merger as required by the express terms of the agreement; (2) Ketera was open to any and all negotiations with Ariba and made a good-faith offer of $100,000 despite its belief that no additional fees were due; (3) Rearden is not an "Ariba Competitor" as defined under the License Agreement, and therefore Ketera did not breach the provision prohibiting assignment to an "Ariba Competitor" and (4) Ketera paid all fees due and complied with all other obligations under the License Agreement.  Thus, Ketera has not materially breached the License Agreement in any fashion.

52.     Ariba has breached by purporting to terminate when Ketera has not materially breached any provision of the Agreement.

53.     Section 12(c) of the License Agreement requires both parties to negotiate in good faith to determine if there are any additional fees due by the resulting assignee.  At no point has Ariba attempted to negotiate any additional fees with Ketera or Rearden under the Negotiation Clause.  Ariba has breached this provision by sending a Notice of Termination rather than undertaking a good faith effort to negotiate, and continuing to refuse to undertake any such efforts, despite Ketera's attempts to do so.

54.     As a result of Ariba's breach, Ketera has incurred substantial costs and has depleted internal resources to take protective measures with respect to any Ariba code in Ketera's possession in anticipation of litigation, and will continue to suffer these damages and additional damages in designing and developing new code and modifying the Licensee Applications.  Ketera has also incurred attorneys' fees and other expenses.  These damages are of

an unknown magnitude to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### (By Ketera)

55. Ketera realleges each and every allegation in paragraphs 1-54.

56. The License Agreement is a valid contract.

57. Ketera has performed and is willing to perform all obligations under the contract.

58. Ketera provided advance written notice of its merger with Rearden.

59. Ketera was at all times willing to negotiate in good faith with Ariba regarding the possibility of additional fees due. This included Ketera's offer of an additional $100,000 subscription fee, despite its belief that no additional fees are due under the License Agreement.

60. Ariba unfairly interfered with Ketera's rights to receive the benefits of the License Agreement, which included, among other things, the right to assign the License Agreement in connection with a merger without Ariba's consent. Ketera fully complied with its obligations under the License Agreement, but Ariba seeks to thwart the merger between Rearden and Ketera, and Ketera's continuing operations by refusing to respond to attempts at negotiation under Section 12(c) of the License Agreement, falsely claiming breach of the contract by Ketera, purporting to terminate the License Agreement in the face of Ketera's continued compliance with all of its obligations under the terms of the License Agreement; and attempting to enforce against Ketera a supposed form click-through contract that has no force over any source code actually in Ketera's possession.

61. In addition, Ariba has brought new allegations of breach in its Complaint, completely disregarding its obligations under the contract to allow time for cure. This includes: Ariba's claim that Rearden is somehow an Ariba Competitor, despite the clear definition of that term in the License Agreement, and the alleged failure to display the "Powered by Ariba" logo.

62. Finally, Ariba claimed to base its purported termination in part on a ground it has now completely abandoned: the alleged failure to pay Marketplace Revenue Share fees due. Thus, Ariba breached the covenant by basing its termination on a ground its own conduct

26

1  demonstrates was meritless, presumably to purport to terminate in 30 days rather than 60 days.

2  63.     Ketera has suffered damages as a result of Ariba's conduct in an amount to

3  proven at trial.

4  ### THIRD CLAIM FOR RELIEF

5  **(Intentional Interference with Contract)**

6  **(By Rearden and Ketera)**

7  64.     Rearden and Ketera reallege each and every allegation in paragraphs 1-63.

8  65.     Rearden and Ketera entered into a contract for Ketera to merge with a subsidiary

9  of Rearden.

10  66.     Ariba had knowledge of this proposed merger contract when Ketera sent Ariba

11  the required letter of notice on November 19, 2010.

12  67.     Instead of attempting good faith negotiations regarding the possibility of any

13  additional fees due under the License Agreement, Ariba responded by claiming any merger

14  would be a breach of the License Agreement.  Ariba thus intentionally refused to negotiate in

15  good faith and comply with the License Agreement, and instead, claimed an incurable breach of

16  the License Agreement if Ketera complied with its contractual obligation to merge with Rearden.

17  This November 29, 2010 letter from Ariba to Ketera was intentionally designed to induce a

18  breach or disruption of Ketera and Rearden's contractual relationship.  This letter, Ariba's

19  continued refusal to engage in the required good-faith negotiation under the License Agreement,

20  and Ariba's continued claims of breach have caused actual disruption of the contractual

21  relationship between Ketera and Rearden.  For example, it has interfered with Rearden's

22  integration of the Licensee Applications developed by Ketera into Rearden's suite of software

23  applications.

24  68.     Due to Ariba's false claims of breach and purported termination of the valid,

25  perpetual license to the software and code, Rearden has been forced to slow integration of Ketera

26  under the contractual merger relationship, thus making both Rearden and Ketera's performance

27  under the merger contract both more burdensome and expensive, and both have been damaged in

28  an amount to be proven at trial.  Rearden and Ketera are also entitled to punitive damages

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS
CASE NO. CV 11-01619

554796.01

pursuant to California Civil Code Section 3294.

## FOURTH CLAIM FOR RELIEF

### (Violation of Business and Professions Code Section 17200)

### (By Rearden and Ketera)

69.   Rearden and Ketera reallege each and every allegation in paragraphs 1-68.

70.   Ariba's activities as set forth above violate California Business and Professions Code § 17200.  Ariba's unlawful and unfair business practices include, but are not limited to, Ariba's intentional interference with Rearden and Ketera's merger contract through its refusal to negotiate in good faith under the License Agreement, and its failure to allege certain instances of breach in a manner allowing a good-faith attempt to cure, thereby disrupting performance of the contract and making it more burdensome and costly.  Ariba's unlawful activities further include interference with Ketera's rights to receive the benefits of the License Agreement, which included, among other things, the right to assign the License Agreement in connection with a merger without Ariba's consent and the right to create and use Licensee Applications, and Ariba's attempts to enforce a click-through agreement against Ketera when it does not apply to any code in Ketera's possession.

71.   As a result of Ariba's conduct, Rearden and Ketera are due restitution and any and all equitable relief pursuant to California Business and Professions Code § 17203, and related remedies.

## PRAYER FOR RELIEF

WHEREFORE, Rearden and Ketera seek judgment in its favor and against Ariba as follows:

1.    For compensatory damages in an amount subject to proof at trial, including prejudgment interest as allowed by law;

2.    For punitive damages pursuant to California Civil Code Section 3294;

3.    For restitution and all applicable equitable relief pursuant to California Business and Professions Code § 17203;

4.    For costs incurred in this lawsuit;

1     5.     For such other attorney's fees, costs of suit and interest as provided for by the

2     License Agreement and as may be allowed by law;

3     6.     For such other and additional relief as this Court deems just and proper.

4                          **<u>JURY TRIAL DEMANDED</u>**

5     Rearden and Ketera demand a trial by jury as to all issues so triable that are raised in the

6     Complaint, this Answer and these Counterclaims.

7                                             Respectfully submitted,

8     Dated:  April 26, 2011                  KEKER & VAN NEST LLP

9

10

11                                   By: _/s/ Stuart L. Gasner_____
                                         STUART L. GASNER
12                                       Attorneys for Defendants and
                                         Counterclaimants
13                                       REARDEN COMMERCE, INC. and
                                         KETERA TECHNOLOGIES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

554796.01